UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 04-10020-RWZ |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| MICHAEL HOWARD, | ) | 18 U.S.C. § 1341 (Mail Fraud) |
| | ) | 18 U.S.C. § 1956 (Money Laundering) |
| Defendant. | ) | 18 U.S.C. § 982 (Forfeiture) |
| | ) | 18 U.S.C. § 2 (Aiding and Abetting) |
| | ) | |

## SUPERCEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times material to this Indictment,

1.    MICHAEL HOWARD ("HOWARD") was a resident of Nevada and an employee of Muro Pharmaceutical, Inc.

2.    Muro Pharmaceutical, Inc. ("Muro") was a corporation headquartered in Tewksbury, Massachusetts.

3.    Bank of America was a federally insured bank.

## OVERVIEW OF THE SCHEME

4.    HOWARD engaged in an elaborate scheme to defraud Muro in which he submitted to Muro hundreds of thousand of dollars in phony vendor invoices, demand letters and expense receipts for payment. Using the bank accounts of other corporations in which he had interests, he laundered the reimbursement checks he received from Muro, ultimately keeping the proceeds for himself.

*Muro's Business*

5.    Muro Pharmaceutical was a manufacturer of specialty prescription drugs for allergies and respiratory illnesses, including drugs under brand names "Volmax," "Prelone," and "Optivar." The company marketed these and other drugs directly to physicians and health insurers throughout the United States.

6.    From approximately January 1996 to November 2002, HOWARD served as Muro's West Coast National Account Manager, a position that essentially entailed persuading traditional health insurers, HMOs and prescription benefits managers ("PBMs") – that is, companies that manage the prescription drug benefit plans of large employers and HMOs – to include Muro's drugs in their coverage plans.

7.    Like a traditional sales person, HOWARD spent much of his time cultivating relationships with his account contacts, often through dinners or other entertainment. His job also entailed the sponsoring of professional training for his clients' physician members. The principal rationale for this approach was that the more familiar physicians were with Muro's products, the more likely they would be to demand that the insurers cover them.

8.    The training often included the presentation of symposiums at which expert physicians, who were paid honoraria by Muro, would present the latest research in allergies and respiratory medicine, as well as information about the efficacy of Muro's products.

9.    Muro's National Account Managers, including HOWARD, also promoted the company's products by underwriting the cost to HMOs and PBMs of printing literature about Muro's products and distributing it to their physician members. National Account Managers typically would submit invoices or payment demand letters for such services to Muro on behalf

2

of the HMO's and PBM's. Muro in turn would mail its payments directly to the companies.

### *Howard's Abuse of his Expense Privileges*

10.     Like most companies, Muro reimbursed its employees for expenses incurred in the execution their job responsibilities. For National Account Managers like HOWARD, such expenses ordinarily included meal, lodging and travel expenses incurred when traveling to meetings with insurers, HMOs and PBMs in their territories. They would charge the expenses on their credit cards, pay the credit card bills themselves, and seek reimbursement from the company by submitting receipts to Muro at its Tewksbury, Massachusetts headquarters.

11.     Despite knowing that he was not allowed to seek reimbursement for personal expenses, beginning in his first month on the job, January 1996, HOWARD submitted numerous receipts to Muro for expenses that had nothing to do with his job. These included numerous gas fill-ups of his wife's automobile, as well as groceries for his own consumption.

12.     When Muro discovered that HOWARD's expenses far exceeded those of his colleagues, Muro admonished HOWARD to curtail his spending. The company also reprimanded him for seeking reimbursement for fuel for his wife's car. Although he acknowledged that only job-related expenses should properly be reimbursed, HOWARD continued to seek reimbursement for patently personal expenses.

### *Howard's Submission of Fraudulent Invoices and Demand Letters*

13.     By 1999, Muro's growing sensitivity to HOWARD'S use of his expense privileges prompted HOWARD to seek other means to defraud the company. In approximately October 1999, he began to submit for reimbursement fictitious invoices and demand letters bearing the letterhead of HMOs and PBMs that purported to reflect services performed on behalf

of Muro. In most instances, these services related to the printing of product literature, the presentation of symposiums, or the sponsoring of "educational" programs. HOWARD knew that the HMOs and PBMs had not performed the services reflected in the invoices and demand letters, yet he submitted them to Muro's headquarters as though they were authentic.

14.     To lend credibility to his phony reimbursement claims, HOWARD made numerous misrepresentations to company officials about the services the HMOs and PBMs supposedly provided.   In addition, by scanning real invoices and letters from the companies into his computer, HOWARD was able to produce invoices and letters that appeared to be authentic. HOWARD also forged the signatures on the demand letters, either by writing it himself or printing a scanned version of the signature into the signature block.

15.     Critical to HOWARD'S scheme was his ability to obtain Muro's payments on the invoices and demand letters. Toward this end, HOWARD insisted that, instead of mailing the checks directly to the service provider, Muro send him the checks so that he could deliver the checks in person. He contended that this approach would ensure prompt payment and provide him an opportunity for more face-time with his clients.

16.     Muro obliged HOWARD by sending the checks by Federal Express from the company's Tewksbury, Massachusetts headquarters to his home in Las Vegas. HOWARD then would deposit the checks into bank accounts to which he had access. In the few instances where the vendor had performed the service indicated in the invoice or letter but at a lower price, HOWARD would pay the vendor the amount on the actual, underlying invoice and keep the difference. For the rest of the phony invoices and letters, HOWARD kept all of the money paid by Muro.

4

17.    HOWARD submitted numerous of his phony demand letters in the name of

Mature Rx Plus of Nevada, Inc. ("Mature Rx"), a PBM incorporated in Nevada on April 28,

2000, that HOWARD helped to establish.  HOWARD was a director of the corporation and was

solely in charge of the company's bank account.

18.    Mature Rx was set up for the sole purpose of becoming the PBM for the State of

Nevada's prescription drug program, meaning that if Mature Rx did not win the state contract, it

would have no business.  Later that year, the  State of Nevada in fact turned down Mature Rx'

bid.  Ultimately, the company was dissolved on March 31, 2001, never having done any business.

19.    Nevertheless, even though Mature Rx was never an operating entity, HOWARD

submitted for reimbursement to Muro approximately eighteen letters on Mature Rx letterhead

demanding payment for printing and distributing literature on Muro's products, as well as other

services.  HOWARD submitted these letters knowing that Mature Rx had never performed such

services for Muro.  As a ruse to conceal his fraud, HOWARD addressed the letters to "Michael

Howard, Muro Pharmaceutical" and forged the signatures of individuals who worked for Mature

Rx's corporate parent, FFI Rx Managed Care, Inc. ("FFI").

20.    Muro paid a total of $85,000 to Mature Rx based on the phony demand letters

HOWARD submitted.  HOWARD deposited Muro's checks to Mature Rx in the Mature Rx

account, and, as the sole signatory on the account, ultimately used the proceeds for own personal

benefit.

21.    Over the course of his scheme, HOWARD submitted more than eighty phony

invoices and demand letters, ranging in amount from $750 to over $25,000.  By the time he was

fired from Muro in November 2002, HOWARD had received in excess of $500,000.

5

## COUNTS ONE through FIVE
### (Mail Fraud - 18 U.S.C. § 1341)

THE GRAND JURY FURTHER CHARGES THAT:

22.    Paragraphs 1-21 are realleged and incorporated by reference as though fully set forth herein.

23.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### MICHAEL HOWARD

and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing and attempting to do so, did cause persons to place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service or by private or commercial carrier, and caused to be deposited matters and things to be sent or delivered by the United States Postal Service or by a private or commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial carrier according to the directions thereon, such matters and things, as follows:

| COUNT | DATE (on or about) | MATTER MAILED |
|---|---|---|
| 1 | 2/8/02 | Federal Express delivery from Muro Pharmaceutical in Tewksbury, Massachusetts to Mr. Michael Howard in Las Vegas, Nevada; |
| 2 | 3/29/02 | Federal Express delivery from Muro Pharmaceutical in |

6

Tewksbury, Massachusetts to Mike Huward (sic) in Las Vegas, Nevada;

| 3 | 4/5/02 | Federal Express delivery from Muro Pharmaceutical in Tewksbury, Massachusetts to Mike Howard in Las Vegas, Nevada; |
| 4 | 4/19/02 | Federal Express delivery from Muro Pharmaceutical in Tewksbury, Massachusetts to Mike Howard in Las Vegas, Nevada; |
| 5 | 7/26/02 | Federal Express delivery from Muro Pharmaceutical in Tewksbury, Massachusetts to Mike Howard in Las Vegas, Nevada; |

All in violation of Title 18, United States Code, Section 1341 and 2.

### COUNTS SIX through NINE
### (Money Laundering - 18 U.S.C. 1956(a)(1)(B)(i))

THE GRAND JURY FURTHER CHARGES THAT:

24.    Paragraphs 1-21 are realleged and incorporated by reference as though fully set forth herein.

25.    When HOWARD began to submit phony invoices to Muro in approximately October 1999, he deposited the payment checks into an account in his own name at Bank of America by forging the endorsement signatures on the checks.   He soon realized that as he continued to defraud Muro, he would need to conceal the proceeds of his scheme from Muro and others.

26.    Toward this end, in approximately March 2000, HOWARD began to deposit the invoice checks into Mature Rx accounts at Bank of America, on which he alone had signature authority.  In taking this step, HOWARD intended to make the deposits of Muro checks less traceable.

7

27.    From approximately February 2000 to June 2002, HOWARD deposited approximately seventy Muro checks into the Mature Rx accounts, account numbers xxx-xxx-6773 and xxx-xxx-7206. Once the funds were in the accounts, he used them for his own purposes.

28.    After Mature Rx was dissolved, its parent corporation, FFI, requested that HOWARD collect Mature Rx's business records and return them to FFI. HOWARD returned the records but initially retained Mature Rx's checkbook, so that he could continue to write checks to cash for himself. After repeated demands from FFI for the checkbook, HOWARD relented and returned the checkbook.

29.    With the Mature Rx accounts no longer available to him, HOWARD continued to conceal the proceeds of the phony invoices by depositing Muro's checks into another Bank of America account in the name of I.M. Worldwide (account number xxx-xxx-9189), a web page design company started by HOWARD's son, Marc Howard. I.M. Worldwide generated virtually no revenue in the two years it was open. HOWARD deposited approximately seven Muro checks into the I.M. Worldwide account, worth more than one hundred thousand dollars, even though I.M. Worldwide never performed any services for Muro. Ultimately, HOWARD used the funds for his own purposes.

30.    HOWARD used the I.M. Worldwide and Mature Rx accounts as a means of concealing the source of the funds he deposited into it, namely the proceeds of the phony invoice scheme.

8

31.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

MICHAEL HOWARD

did knowingly conduct and cause to be conducted financial transactions, as set forth below, affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, that is mail fraud in violation of 18 U.S.C. § 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, with knowledge that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE (on or about) | TRANSACTION |
|---|---|---|
| 6 | 4/3/00 | Mature Rx check #2502 in the amount of $5,000, drawn from Bank of America account number xxx-xxx-6773 and signed by Michael Howard and addressed to "Cash;" |
| 7 | 4/8/00 | Mature Rx check #2503 in the amount $2,000, drawn from Bank of America account number xxx-xxx-6773 and signed by Michael Howard and addressed to "Cash;" |
| 8 | 6/22/00 | Mature Rx check #2529 in the amount $1,500, drawn from Bank of America account number xxx-xxx-6773 and signed by Michael Howard and addressed to "Cash;" and |
| 9 | 9/7/00 | Mature Rx check #5148 in the amount $4,500, drawn from Bank of America account number xxx-xxx-6773 and signed by Michael Howard and addressed to "Cash." |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i)  and 2.

9

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981 and 28 U.S.C. § 2461(c) and 18 U.S.C. § 982)

THE GRAND JURY FURTHER CHARGES:

32.    As a result of the offenses in violation of 18 U.S.C. § 1341 charged in Counts One

through Five of this Indictment, the defendant,

### MICHAEL HOWARD

shall forfeit to the United States any property, real or personal, that constitutes, or is derived

from, proceeds traceable to the commission of the offense, including but not limited to:

in excess of $500,000 in United States currency which HOWARD received from Muro.

33.    As a result of the offenses in violation of 18 U.S.C. § 1956(a) charged in Counts

Six through Nine of this Indictment, the defendant,

### MICHAEL HOWARD

shall forfeit to the United States any property, real or personal, involved in such offenses, or any

property traceable to such property, including but not limited to: all funds credited to Bank of

America account number xxx-xxx-6773 held in the name of Mature Rx.

34.    If any of the forfeitable property, as described in paragraphs 32 and 33 above, as a

result of any act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third person;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be subdivided

10

without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), incorporated by 18 U.S.C. §

982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to

the value of the property described in paragraphs 32 and 33 above.

All in violation of 18 U.S.C. §§ 982(a)(1) and 982(b)(1), 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c).

## NOTICE OF ADDITIONAL FACTORS

THE GRAND JURY FURTHER CHARGES THAT:

35.    Including relevant conduct within the scope of U.S.S.G. §1B1.3, the offenses

charged in Counts One through Five of the Superseding Indictment (mail fraud in violation of 18

U.S.C. §1341):

        a.    involved a loss exceeding $400,000.00, as described in U.S.S.G.

                2B1.1(b)(1)(H); and

        b.    involved sophisticated means, as described in U.S.S.G. §2B1.1(b)(8).

A TRUE BILL

_____

FOREPERSON OF THE GRAND JURY

_____

Jonathan F. Mitchell
Assistant United States Attorney

Date: 9/22/04

District of Massachusetts  September 22, 2004
Returned into the District Court by the Grand Jurors
and filed

Thomas F. Quinn
Deputy Clerk
9/22/04 @ 2:15pm

13

JS 45 (5/97) - (Revised USAO MA 1/15/04)

**Criminal Case Cover Sheet**                                    **U.S. District Court - District of Massachusetts**

Place of Offense: __Tewskbury, MA__    Category No. __II__           Investigating Agency __FBI__

City __Tewksbury__                    **Related Case Information:**

County __Middlesex__                  Superseding Ind./ Inf. __X__              Case No. __04-10020-RWZ__
                                      Same Defendant __X__          New Defendant _____
                                      Magistrate Judge Case Number    _____
                                      Search Warrant Case Number      _____
                                      R 20/R 40 from District of      _____

**Defendant Information:**

Defendant Name __Michael Howard__                    Juvenile  ☐ Yes    ☒ No

Alias Name _____

Address __9307 Opus Drive, Las Vegas, NV 89117 (last known)__

Birth date (Year only): __1940__  SSN (last 4 #): __9245__  Sex __M__  Race: __White__   Nationality: _____

**Defense Counsel if known:**    __Robert George__          Address: __77 Newbury Street__
                                                                   __Boston, MA 02116__
**Bar Number:** _____

**U.S. Attorney Information:**

AUSA __Jon Mitchell__                          Bar Number if applicable __629499__

Interpreter:  ☐ Yes ☒ No          List language and/or dialect: _____

Matter to be SEALED:  ☐ Yes  ☒ No

          ☐ Warrant Requested          ☒ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____  in _____ .
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____ on _____

Charging Document:     ☐ Complaint      ☐ Information      ☒ Indictment

Total # of Counts:     ☐ Petty _____    ☐ Misdemeanor _____   9 Felony _____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date: __9/22/04__          Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Michael Howard _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 1341 | Mail Fraud | 1-5 |
| Set 2  18 U.S.C. § 1956 | Money Laundering | 6-9 |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:** _____

Howard JS 45.wpd - 1/15/04 (USAO-MA)