**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**NO. 04-10020-RWZ**

**UNITED STATES OF AMERICA**

v.

**MICHAEL HOWARD,**
**Defendant.**

---

**DEFENDANT'S PRESENTENCE MEMORANDUM**

---

Michael Howard has been charged by indictment
in this Court with nine (9) counts of mail fraud
and money laundering arising out of actions taken
while serving as the West Coast National Accounts
Manager for the now defunct Muro Pharmaceutical
Inc. from 1999 through 2002. The company was then
based in Tewskbury, Massachusetts, which explains
jurisdictionally why the case is here. Mr. Howard
stands accused, through false expense accounts and
fraudulent invoices, of receiving reimbursement
checks to which he was not entitled from Muro in
the amount of $533,593.75.[1] Although he disputes
the amount of the loss while admitting his

---

[1] The indictment charges Mr. Howard, in counts 6 through 9,
with taking thirteen thousand ($13,000.00) in this manner.
He also faces a forfeiture allegation.

_1_

wrongdoing, Mr. Howard pled guilty to these counts on March 9, 2005 and is scheduled to be sentenced by this Court on June 2, 2005.

Mr. Howard, who is sixty four (64) years old and lives in Las Vegas, Nevada with his wife of forty (40) years, travels to this Court at his own expense for these proceedings whenever ordered. He is also the subject of a civil lawsuit and proceeding in Nevada brought by the Chubb Insurance Company in which it seeks reimbursement for the very same losses sought by the Government in this case through forfeiture. Mr. Howard has been unable to settle that case as a result of the pendency of these criminal matters in Massachusetts.

Mr. Howard's decision to plead guilty in this case was based on the tremendous damage and estrangement that a trial would have caused to the people he cares about, as well as further embarrassment for his family and loved ones. Currently employed as a real estate broker by Coldwell Banker in Las Vegas, he has worked on a daily basis since January 28, 2004, the date of this indictment, with the specter of this

sentencing looming over him.   It has been hard for
him and his family.                                   .

    Mr. Howard has fully accepted responsibility
for the crimes with which he has been charged
(although he disagrees with the claimed loss by
Muro).   However, he feels that a lengthy trial
would accomplish nothing other than to hurt those
who care for him.   In any case, Mr. Howard
respectfully directs this Court's attention to a
discussion of the following aspects of his
particular situation.   He hopes that this Court
will take all of these matters into consideration
at the disposition of this matter.

### CASE BACKGROUND

    Mr. Howard has pled guilty to an indictment
alleging five (5) counts of mail fraud pursuant to
18 U.S.C. Sections 1341 and 1342, and four (4)
counts of money laundering pursuant to 18 U.S.C.
1956 (a)(1)(B) and 2.  A superceding indictment was
brought on September 22, 2004 in order to address
the implications of the Blakely case when it first
was decided.  Blakeley v. Washington, 124 S. Ct.
2531 (2004).   Mr. Howard will be sentenced on June
2, 2005 by United States District Court Judge Rya

W. Zobel, and it will be the first time he is sentenced in a criminal court in his entire life.

The Presentence Report prepared by United States Probation Officer Sean P. Buckley in this case has fixed the now-advisory guideline range in this case at 30-37 months. See Paragraph 98 of PSR. However, Mr. Howard is instead seeking a probationary sentence (with conditions) based on a variety of different circumstances. He seeks this type of alternative sentence due to his age, his clean record, his family background and the specific case and personal circumstances of this situation.

The reasons for such a downward departure under the pre-Booker guideline structure would have been pitched pursuant to U.S.S.G. Section 5K2.0 and 26 U.S.C. Section 7201, Koon v. United States, 116 S.Ct. 2035 (1996) and Grandmaison v. United States, 77F3d. 555, 560 (1st Circuit 1996). It would have then been suggested that Mr. Howard's actions here were out of the "heartland" of these types of cases, since his character, background and situation certainly deserved consideration for such a downward departure. Another reason for such a

_4_

departure would have been pursuant to 5K2.13 of the U.S.S.G. based upon his diminished capacity at the time of the crimes because of a gambling addiction. It would have been then, and is now, the defendant's position that this Court should depart on the basis of any one or all of these grounds.

His argument for lenience for these reasons is now made in the aftermath of United States v. Booker, 125 S. Ct. 738 (2005) and is simply old wine in a new bottle.

### PERSONAL HISTORY AND VERSION OF EVENTS

Michael Howard has lived much in his sixty four (64) years. He has traveled through four (4) geographies; New York, New England, Florida and the West Coast. A native of the Bronx in New York City, Mr. Howard was born on November 7, 1940 to parents who had less than six (6) years of formal education. His father Michael Howard was a World War Two veteran and Purple Heart winner who worked as a teamster to support the family after his return from overseas. His mother Katherine worked in a factory in order to contribute to the family's income. Mr. Howard is of Polish, Italian, Jewish and Irish descent and is the oldest of five (5)

children, numbering three younger sisters and a younger brother. Mr. Howard became the first in his family to attend and graduate college, and gained success in sports through those years. Mr. Howard also paid for his education through hard work.

Mr. Howard married the former Margaret Carvalho, now 60, of Fall River, Massachusetts on May 29, 1965. Four (4) children were born to their marriage and they have been recently blessed with two (2) grand children, with another on the way. Their family includes Michael (born on March 6, 1966, who is married and lives in Marina Del Rey, California); Matthew (born on September 22, 1967, who is married with two children and living in Telecula, California; Marc (born on April 4, 1971, who is married, expecting his first child and living in San Diego, California); and Melissa (born on January 27, 1976, who is married and living in Henderson, Nevada). The Howards have put all of their children through college and are active in their lives. In a twist, their son Matthew brought the family great surprise and pride by playing

_6_

professional baseball and winning a World Series
championship with the New York Yankees.

        After his graduation from Springfield College
in 1963, Mr. Howard became a respected school
teacher and coach for many years until he entered
the pharmaceutical field full time in 1988.  He
taught and coached at Phillips Andover Academy in
Massachusetts; Carmel High School in Carmel, Rhode
Island; Andover High School in Andover,
Massachusetts; Bristol High School in Bristol,
Rhode Island; and Northeast High School in Fort
Lauderdale, Florida.  As a school teacher and
coach, Mr. Howard held several employments to
support the family, while always working during
school breaks and summers.  He also attended Brown
University from 1966-1967 in order to gain graduate
credits in Chemistry, which qualified him to teach
high school Chemistry.

        Mr. Howard joined the pharmaceutical industry
through the Upjohn Company in Needham Heights,
Massachusetts, and within two (2) years became its
top sales person and was awarded special
recognition. As a sales director for this and other
drug wholesalers, Howard's responsibilities

_7_

increased to running what became a five million
dollar department.  Mr. Howard has worked for
Bergen Brunswig, Diagnostic, Dupont and Monsanto
over the years through 1996, when he took the job
at Muro.  Mr. Howard's tasks over that time
included nationwide contracting for nursing homes,
mail order, home health care and HMOs, during the
evolution of managed care as we know it today.  As
one of the founding members in the non-acute care
industry, Mr. Howard's skills were in demand during
those years.

However, once he entered his fifties, Mr.
Howard's opportunities for employment became more
difficult. His wife took on a managerial position
at Saks Fifth Avenue Department Stores while they
lived in Orlando and Miami, Florida from 1977 until
1985.  Mr. and Mrs. Howard eventually moved to the
West Coast where the rest of their family was, and
is still, living.  Fortuitously, after jobs at
Bergen Brunswig Drug Company and Diagnostic, Inc.,
Mr. Howard joined Muro Pharmaceutical Inc. in 1996
as a National Sales Manager in order to gain access
to the high density of HMOs in California at the
time.  He very quickly moved up the ladder,

gathering accolades along the way. At Muro, he produced over five million dollars in sales, managed over forty five million lives and was twice a member of the Presidents Club, its highest sales award.

However, Muro owner George Berakis sold the Company and the new Company was saddled with a purchase price of $450 million against patent expirations with only $80 million in revenue. After several changes in management, Mr. Howard was appointed the interim Corporate Accounts Director. Mr. Howard's successes at Muro brought millions of dollars into the company, with a market share that caused Muro to be ranked 12th in the entire pharmaceutical industry. While at Muro, Mr. Howard also conducted training for the new sales representatives for managed care, through which approximately two hundred (200) representatives were schooled.

However, a combination of a falling market along with a gambling problem led to the surprise termination of Mr. Howard in November, 2002. Since that time, Mr. Howard has achieved success as a real estate broker in Las Vegas, Nevada where he

has worked for One Cap Realty, Spanish Trail Realty and Coldwell Banker. He is currently ranked in the top 16% of brokers for the Company in Nevada for Coldwell Banker (See Attachment 7).

Upon the advice of a local attorney in Las Vegas, Mr. Howard handed over all documents and invoices which he incurred while working for Muro. He did so in the hope of resolving the civil case which was, and is still, pending against him as a result of Muro claims, which were paid by Chubb Insurance. That package of documents is the basis of his prosecution here in the District of Massachusetts. Although Mr. Howard has made offers to repay these debts and settle this suit with Chubb, the civil case is still pending (See Attachment 5).

## CRIMINAL HISTORY

Mr. Howard's criminal history in this matter is clearly a Category I. He has never been arrested or been in a criminal court room in his entire life, and has been trouble-free since these acts occurred from 1999 through 2002 during a continuing course of events.

## MEDICAL CONDITION

Mr. Howard is generally healthy except for
high cholesterol and high blood pressure, both of
which are treated by prescription medications.  Mr.
Howard also suffers from a debilitating gambling
addiction for which he has sought counseling
through Gamblers Anonymous, and which is discussed
in his Pre-Sentence Report (See Attachment 1 and
Paragraph 75 of the PSR).

## DEFENDANT'S VERSION OF EVENTS

Mr. Howard is aware of the Government's
position that he abused his position of trust at
Muro Pharmaceutical to the tune of $533,593.75, but
submits that the amount of money claimed by Muro is
excessive.  He does not deny that he, during the
period of time at issue, deposited Muro checks
directly into bank accounts opened and controlled
by him and his family, but that he did not use
subterfuge to do so.  The expenses which he claimed
were in many cases accurate and valid for the
dinners, entertainment, training, professional
symposiums, literature, honoraria, expert speaker
payments and other expenses related to his duties.
However, he admits some of the amounts he claimed

_11_

were excessive and for personal expenses related to
the financial hardship that he was suffering
through because of his gambling during the same
period of time.

Mr. Howard is now the defendant in a civil
proceeding in Nevada brought by Chubb Insurance to
recover these expenses and the case is currently in
summary judgment.  The irony is that this case,
which seeks forfeiture in an amount equal to the
civil demands in that suit, has prevented the
settlement of the civil suit because any such
agreement could be used against Mr. Howard in this
matter.  He has learned the hard way that his
previous cooperation in the civil suit in turning
over personal documents (his expense accounts) has
led to his indictment in this case.  No good deed
goes unpunished (See Attachment 5).

**PRE-BOOKER DISCUSSION**

Departures under the old guideline rules were
compellingly discussed in the now well-known
decision of Koon v. United States, 518 U.S. 81, 116
S.Ct. 2035, 135 L.E. 2d. 392 (1996).  In that case,
the Supreme Court established two significant
principles regarding downward departures: 1) the

court created a framework for analyzing when departures may be applicable; and 2) the court established the standard of review to be employed by Circuit Courts.

One possible ground for departure below the sentence of thirty to thirty seven months in this case would be for a mitigating circumstance which the guidelines do not adequately take into consideration pursuant to 18 U.S.C. §3553(b), which is more commonly known as the "heartland" test. The defendant contends that because of such mitigating circumstances, which take his case out of the heartland of the applicable sentencing guideline provisions, this Court should impose less than the old guideline required sentence.    The Commission's treatment of departure factors led then-Chief Judge Breyer to explain that a sentencing court considering a departure should ask the following questions:

1)    What features of the case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

2)    Has the Commission forbidden departures based on those features?

_13_

3)    If not, has the Commission encouraged
departures based on those features?

United States v. Rivera, 994 F.2d 942, 949
(C.A.1 1993).

With this discussion in mind, Mr. Howard
respectfully submits that any one of the following
reasons would have allowed this Court to depart
downward in this case.

**Mental Capacity.**    The Diminished Capacity
Departure provision pursuant to Sec.5K2.13 of the
USSG reads as follows; "If the defendant committed
a non-violent offense while suffering from
significantly reduced mental capacity not
resulting from voluntary use of drugs or other
intoxicants, a lower sentence may be warranted to
reflect the extent to which reduced mental
capacity contributed to the commission of the
offense, provided that the defendant's criminal
history does not indicate a need for incarceration
to protect the public."

The Third Circuit concluded for the first time
that while mental and emotional conditions are not
ordinarily relevant to determine whether a
downward departure is warranted, one suffering

_14_