from a significantly reduced mental capacity may
be eligible for a departure if he is unable to
absorb information in a "usual way" or to exercise
the power or reason or defendant knows what he is
doing and that it is wrong but cannot control his
behavior or conform it to the law). United States
v. McBroom, 124 F.3d. 533, 548-550 (3d. Cir. 1997)
See also United States v. Ramos-Oseguera, 120 F.3d
1028, 1040-41 (9th Cir. 1997) (remanded for
additional findings because learned helplessness
due to battered woman's syndrome might be basis
for diminished capacity departure).

     Such precedent lays the groundwork for Mr.
Howard's argument for downward departure in this
case.  Michael Howard was gambling to the tune of
ten to twenty thousand dollars in markers per
month during the time he was accused of committing
this fraud.  His wife and friends were his
companions in the lifestyle which led to his
financial and professional downfall, and is
described in paragraph 79 of the PSR.  Mr. Howard
has taken steps to address these issues and has
not gambled since participating in counseling and
Gamblers Anonymous.  His psychological condition

_15_

certainly is the basis of a departure for

diminished capacity. His activities were not only

aberrant, but completely contrary to his mode of

living both before and after the crimes.

**Aberrant Behavior.** These acts took place over a

three year period in a long life which has had no

other transgressions. In other words, Michael

Howard's life does not indicate any other criminal

history or improper behavior of any kind. The

Eighth Circuit determined that acts of aberrant

behavior can serve as a basis for a downward

departure. United States v. Kalb, 105 F. 3d. 426,

430 (8ᵗʰ Cir. 1997) (remanding for reconsideration,

in light of Koon, of Circuit precedent stating

that aberrant behavior departures are available

only in cases involving "single acts" in

probation-eligible offenses). United States v.

Martinez-Villegas, 1998 U.S. Dist. Lexis 1450 at

33-37 (C.D. Ca. Feb. 2, 1998)(departure for

aberrant behavior granted where the only evidence

of past crimes by defendants was their mere

bragging and "bolstering" to undercover agents,

the crime lacked extensive planning or

sophistication, and defendants were heavily

induced to the crime by imperfect entrapment of government); United States v. Delvalle, 967 F.Supp. 781, 784 (E.D.N.Y. 1997)(departing for aberrant behavior where defendant's only two criminal acts occurred a week apart because the acts "were so closely related that they can be understood as a unitary instance of behavior" and because defendant had a minor role in the crime, was...fully employed..., and made great effort to provide assistance to the government).

**Family Circumstances.** The Second Circuit reaffirmed, in light of Koon, that extraordinary family circumstances may serve as a basis for a downward departure in outside the "heartland" cases. In United States v. Galante, 111 F.3d. 1029 (2d. Cir. 1997) the Court upheld the district court's conclusion that "the reduction or elimination of time to be served in prison permitted [the defendant] to continue to discharge [his] existing family responsibilities, avoided putting the families on public assistance and spared traumatizing the vulnerable emotions of [his] children" were valid bases for departure. Id. at 1037. See also United States v. Graham,

_17_

1998 U.S. Dist. Lexis 2243 at *14-15(N.D. Il. Feb.
20, 19980 (granting downward departure for family
circumstances where defendant's family's
disabilities require him to perform basic everyday
tasks such as cooking, cleaning and doing "the
heavy work" for them; the court also noted
defendant no longer posed a threat to the
community, had no criminal history when caught and
avoided violence during [his crimes]).

The Howard family is fully intact and healthy,
having worked and supported themselves and many
others.  This security is a direct result of Mr.
Howard's strength as a father, nurturer and
breadwinner.  There is no doubt that he has done a
great job in his upbringing of his four children
and his activities as a caring and loving
grandfather.  In some quarters, such a family
oriented approach would be enough to save the day.
However, it should be here emphasized that since
Mr. Howard's entire life and future well-being
rotates on his family axis, this Court should take
this family's success into consideration at
sentencing.

**Plea Bargain.** In this case, Michael Howard has pled guilty, saving the Government the time and expense of proving its case and the losses alleged. Since the Koon decision, the First Circuit has expressed a willingness to allow a sentencing court to grant downward departures based on a significant conservation of judicial resources. United States v. Dethlefs, 123 F3d. 39,43 (1st Cir. 1997)(holding that, in theory, a defendant's guilty plea that results in a significant conservation of judicial resources may serve as a predicate for downward departure. The appellate panel in Dethlefs, while denying a downward departure, stated that in a post-Koon era, "it would be folly to conclude that a timely guilty plea, which conserves judicial resources and thereby facilitates the administration of justice, must not be considered under any circumstances in the departure calculus" Id. at 46.

**Combination of Factors.** Some courts following the Koon decision have upheld departures for outside the "heartland" cases where a combination of discrete factors was itself a sufficiently unique

_19_

departure circumstance. See United States v.
Delgado, 1998 U.S. Dist. Lexis 1921 at *5-7(E.D.
NY. Feb. 19, 1998)(individually and in
combination, the factors of duress, aberrant
behavior, diminutive size and meek demeanor, and
defendant's exceptionally difficult life, created
reason for departure); United States v. Martinez,
978 F. Supp. 1442, 1997 U.S. Dist. Lexis 16454 at
*25-30 (D.N.M. Oct. 22, 1997)(defendant's age,
mental and emotional condition, employment
record, family ties, and employment related
contributions remove the case from the
"heartland"); United States v. Dyce, 975 F. Supp.
17, 22 (D.D.C. 1997)(holding a "combination of
factors" including family circumstances, post-
offense rehabilitation and medical problems
formed the basis for departure).

    Mr. Howard is only trying to remain in the
community while he pays his penalty in full.  The
argument that a prison sentence is necessary to
punish Mr. Howard for his actions is misplaced.
He is suffering on a daily basis, the alleged
crime is one of non-violence, and he is
addressing the sickness which gave rise to his

_20_

conduct. With this Court's consideration, his freedom will only allow him to slowly, albeit more rapidly than if jailed, re-gain the footing which made him a contributing member of his family and community over the past many years.

## POST-BOOKER

Mr. Howard argues that for these same reasons, this Court should allow him a sentence of probation in the wake of the Booker decision. 125 S. Ct. 738 (2005).

Plowing through the plethora of cases that have been decided since Booker was issued by the United States Supreme Court on January 12, 2005 would be a waste of paper and this Court's time, which clearly will make its own decision in this case as to how the Booker principles will be applied here. Suffice it to say that the United States Supreme Court in the Booker decision applied its holdings in Blakeley v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 S.Ct. 466, 477 (2000) to the Sentencing Guidelines, thereby making those standards advisory rather than mandatory.

If the sentence in this case were stll
computed under the Guidelines, the sentence
demanded is harsh.  Specifically, the Guidelines
departed from past sentencing practices in
setting offense levels for crimes such as fraud,
but it depended on fair and reasonably consistent
charging policies in the Department of Justice,
which is not always the case.  For instance, the
Guidelines depend on the Government only charging
the most readily provable case, which is often
not the case.  Additionally, conspiracies or
schemes (as here) alleged over an extended period
of time punish the smaller offender in the same
manner as a one time large offender.  Therefore,
sentencing disparities in the sentencing regime
abounded under the guidelines.  The mission was
not accomplished, and Mr. Howard would have been
a victim.

Accordingly, after nearly twenty (20) years
during which sentencing discretion had been taken
away, it has now been given back to the United
States District Courts.  There is no longer any
need to follow the old departure methodology
discussed in the aforementioned paragraphs

because the guidelines are no longer binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the "heartland". Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonably and carefully supported by reasons tied to the Section 3553(a) factors.

In order to satisfy its concerns that the United States Constitution's Sixth Amendment jury trial right was being violated by the rigid application of the sentencing guidelines, the Court severed the provision of the federal sentencing statute that made the Guidelines mandatory, thus rendering the Guidelines advisory. Booker at 757. As a result, this Court is no longer bound by the Guidelines but must consult them and take them into account when sentencing. Booker at 767.

Courts now sentence under the standard of "reasonableness", which is guided by the statutory factors set out in 18 U.S.C. Section 3553(a), together with the now advisory

_23_

guidelines. Booker at 766-767. It is only upon this ground of reasonableness that any appellate court can review a sentence imposed by the District Court. Booker at 757, 765-66.

It is for the Court to determine that reasonable point where a sentence should fall in any given case. The Court cannot adopt a position taken by the Government or Probation that a criminal sentence should fall within the Guideline range, absent highly unusual circumstances. Such a "wholesale application of the Guidelines as per se reasonable effectively converts the now-advisory guidelines to mandatory guidelines triggering unconstitutionality in the same way that the Washington guidelines did in Blakely." See Washington v. Blakely, 124 S. Ct. at 2538; Booker, 125 S. Ct. at 749.

Therefore, this court should not preserve a de-facto mandatory Guidelines scheme by affording the Guidelines a presumption of reasonableness in every case, because it would circumvent Booker's substantive holding and defy the directive that the Court consider the factors in 28 U.S.C. Section 3553(a).

That statute, otherwise known as the

Sentencing Reform Act, requires courts to:

"impose a sentence sufficient, but not greater
than necessary, to comply with the purposes set
forth in paragraph 2" which are "(A) to reflect
the seriousness of the offense, to promote respect
for the law, and to provide just punishment for
the offense; (B) to afford adequate deterrence to
criminal conduct; (C) to protect the public from
further crimes of the defendant; and (D) to
provide the defendant with needed educational or
vocational training, medical care or other
correctional treatment in the most effective
manner."

The statute also further directs sentencing

courts to consider:

"(1) the nature and the circumstances of the
offense and the history and characteristics of the
defendant; (3) the kinds of sentences available;
(6) the need to avoid unwanted sentencing
disparities among defendants with similar records
who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims
of the offense."

Using these new standards, and posing the

same arguments and reasons as in the previous

paragraphs, Mr. Howard seeks this Court's

consideration in pleading for a sentence of

probation.  The defendant cannot argue that his

crime was not serious, and he recognizes the

danger of such a position.  However, when the

allegations against him are weighed against the

background of this particular defendant, it is

clear that more can be achieved if Mr. Howard is sentenced in a manner other than incarceration. In other words, jailing Michael Howard serves no useful purpose if this Court realizes that the purpose of punishment in this case should be rehabilitation.

Rehabilitation is the primary goal of punishment. As stated by the American Bar Association: "The basic idea underlying a sentence ... is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against ... the best way to pursue this goal is to orient the criminal sanction towards the community setting in those cases where it is compatible with the other objectives of sentencing." American Bar Association Project in Standards for Criminal Justice, Standards Relating to Probation 1.

Non-imprisonment in the instant case would be far less costly to administer and would minimize the harm to the defendant's family and friends, all of whom will suffer if he is incarcerated.

It is offered that this Court must recognize the obvious anguish associated with this type of experience, as well as the defendant's personal loss, the destruction of his reputation, and the devastating impact on his family members as well as the defendant as a human being.

With regard to rehabilitation, Mr. Howard is a prime candidate. Given his age, personal situation and educational background, incarceration cannot be said to serve any useful purpose. Punishment by incarceration, added to what the defendant has already endured, would be horribly cruel.

It is the position of the defense that despite all which has happened, and primarily because of his family and friends as well as the physical, mental, emotional and financial punishment which the defendant has already suffered will provide the defendant with the appropriate motivation to re-prioritize his life, which in fact he has already done.   Incarceration will only cause more severe pain and tragedy than has already occurred. The tragedy of this case, which is recognized, is that sentencing must occur in this situation and a life, such as Michael Howard's, must be further

impacted.  Yet it is also and more importantly
clear that he has devastated himself and his
family by his actions and is suffering for it.

So can this Court allow itself to see itself
clear to flexibly resolve this case so that Mr.
Howard can clear his debt and maintain his support
within the community?  The defendant suggests that
this Court can accomplish that goal.  Although his
fear of imprisonment is understandable but may not
necessarily be acceptable in fashioning a
probationary sentence, there are unique reasons to
allow Mr. Howard such consideration in this case.
Those factors would include his clear willingness
to answer for his actions, his desire to make
amends for his wrongdoing and the specific
background facts involved in his situation.  He
has also significantly shortened and alleviated
the Government's burden in their case by his
voluntary disclosure and acceptance of
responsibility.

Mr. Howard deserves a second chance, and such
a sentence would simply attempt to save what is
left of a long yet ravaged life.  Mr. Howard's
remorse is real, and he realizes that he has

committed a "terrible and regrettable mistake that needs to be paid back" (Attachment 1). Mr. Howard also does not minimize the severity of his acts, but suggests that he was "lost in an area where [he] was truly out of character...gambling became the way of life and [he] lost his focus" (Attachment 1). He simply feels that it may be the time for his to remain in society as a rehabilitated, punished and hopefully redeemed human being and where he can make restitution.

The true measure of Mr. Howard's character is in the obvious support and devotion of the people who have known him. His wife Peggy describes him as "the man who has been my world for forty years" (Attachment 2). She describes his "selflessness and sincere compassion for others" while also telling that "he feels extreme regret and remorse and is making his peace with God and working so hard to be able to repay what he owes". His oldest son Michael speaks to his father's "strength of character" (Attachment 3) and his son Matt pleads for "mercy" (Attachment 4).

Mr. Howard's family, as well as his friends, await his with open arms. Neil Mullins, his Las

Vegas attorney, discusses the humiliation, remorse and shame Mr. Howard felt when he brought the case to him (Attachment 5). Mullins also describes the cooperation in the civil case which led to the documentary basis for these charges. That institutional "vindictiveness" has caused these problems for Mr. Howard. Through it all, Mr. Howard remains healthy, has the support of his family and friends and realizes his crime.

It appears that Mr. Howard has turned the corner in many ways. He is clearly a man of great personal character. Yet despite that fact, it is also clear that Mr. Howard feels the terrible remorse, pain and suffering which he has brought upon himself and his family. It is plain that no one will benefit from the incarceration of Mr. Howard in light of his family situation and the circumstances of his particular case. Yet, because he is clearly a man who has done a great deal of good in his life, he seeks this Court's lenience.

Therefore, the defense respectfully urges the Court be guided by the interests of all parties to this disposition, as well as by an understanding

of the individual who is now being considered for

sentencing.  In conclusion, the defendant would

suggest that he is a prime candidate for this

Court's leniency based upon the totality of the

circumstances in the instant case.

                    Respectfully submitted,
                    **MICHAEL HOWARD,**
                    By his attorney,


                    Robert A. George, Esquire
                    BBO # 189400
                    Robert A. George &
                    Associates, P.C.
                    77 Newbury Street
                    Boston, MA 02116
                    617.262.6900

### CERTIFICATE OF SERVICE

    I, Robert A. George, do hereby certify that I
have served a copy of the foregoing ***Defendant's
Pre-Sentence Memorandum***, via hand delivery, on May
27, 2005, on Jonathan Mitchell, Assistant United
States Attorney, One Courthouse Way, Boston,
Massachusetts 02114, as well as upon Sean P.
Buckley, United States Probation Officer.


          Robert A. George, Esquire