UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA ) CRIMINAL NO. 04-10020-RWZ
)
v. )
)
MICHAEL HOWARD )

SENTENCING MEMORANDUM

The government hereby responds to the "Defendant's Presentence Report" and previews the evidence that it intends to offer at the sentencing hearing on June 2.

The Defendant's Presentence Memorandum ("Def. Memo") fails to offer any compelling reason why the defendant should be sentenced below the applicable guideline range. The tenor of the Memorandum plays to a stereotype of white collar offenders. It essentially posits that because the defendant comes from a solid background, in terms of his familial relationships, his professional accomplishments, and educational pedigree, incarcerating him would be pointless. The sentencing guidelines, specifically Section 2F1.1, however, make clear Congress' intent that in fact incarceration is just as appropriate for thieves who steal by means of a pen or computer as it is for thieves who steal by more traditional means. The defendant offers little or no evidence, such as evidence about mental or physical impairments, to support his claim that he should be treated differently from any other white collar defendant. To accept the defendant's argument that the Court ought to depart down to a probation sentence would be ignore Congressional intent and to permit the sort of disparate sentencing the guidelines were designed to remedy.

Below the government briefly addresses the issues likely to arise at sentencing.

Fraud Loss

The Defendant's Memorandum confirms that the defendant has not fully accepted responsibility for his conduct because he is unwilling to acknowledge the entire loss caused by his embezzlement scheme. The defendant offers no alternative loss figure, but merely proffers that the "expenses which he claimed were in many cases accurate and valid." See Def. Memo at 11. The upshot of the defendant's position is essentially: Government, prove it.

At the sentencing hearing, the government will prove that the total fraud loss is $527,893.75, which is comprised of $459,661.58 in false vendor invoices and $68,232.17 in unauthorized business expenses. Toward this end, the government intends to call FBI Special Agent Melissa Lawson, who will summarize the defendant's deposits of Muro Pharmaceutical checks that he obtained by submitted false invoices and expense reports. She also will summarize the interviews of the defendant's clients who supposedly incurred the expenses. The clients confirmed that in fact the expenses were not incurred; nor did they receive payment.

The defendant claims that he reimbursed the companies whose names appeared on his false invoices. Special Agent Lawson will testify, however, that a former auditor in the U.S. Attorney Office who reviewed the defendant's bank records concluded that only $6,486.87 may have been sent to the vendors, which would leave a total loss of $521,406.88. The government also will introduce a summary created by the defendant's civil attorney who, as part of settlement negotiations with Muro, claimed that the defendant paid the vendors approximately $28,000 (although he supplied no documents to support that figure). Even if this amount were credited toward the total fraud loss, the defendant's total offense level would not change.

Abuse of a Position of Abuse

The government concurs with Probation's position and its analysis that the defendant's offense level should be increased two levels under Section 3B1.3 of the guidelines because in carrying out his scheme to defraud, he abused a position of trust.

Departure Grounds

The defendant raises four grounds upon which he urges the Court to depart from the applicable guideline range, either under a traditional departure analysis or pursuant to Title 18, U.S.C., § 3553(a): (1) that the defendant suffered from a "significantly reduced mental capacity . . . [that] contributed to the commission of the offense," namely a gambling addiction; see Def. Memo at 14; (2) that the offense conduct involved "aberrant behavior;" see id. at 16; (3) that extraordinary family circumstances militate in favor of a reduced sentence; see id. at 17; and (4) the defendant saved the government resources by entering a timely guilty plea. See id. at 19. The government briefly addresses each of these in turn.

A. Diminished Capacity

The Court should reject the defendant's diminished capacity argument for the simple reason that he offers no evidence to support the claim that he was a gambling addict, whose compulsion drove his criminal conduct, as opposed to someone who just liked to gamble a lot. Even if "gambling addiction" were a permissible departure ground,[1] the defendant has offered nothing that

[1] In the First Circuit, gambling addiction is a prohibited ground for departure. In United States v. Harotunian, 920 F.2d 1040, 1047 (1st Cir. 1990), the Court of Appeals upheld the district court's (Wolf, J.) rejection of the defendant's departure motion on the grounds of gambling addiction where the district court reasoned that "the guidelines general purpose of deterrence would be ill served by discounting appellant's sentence on this basis . . . . such a dependence [on gambling] would be akin to drug and alcohol addiction – considerations to which the Sentencing Commission assigned little weight." United

sheds light on his mental capacity, such as expert reports or testimony or mental health records. In short, nothing in the record supports a finding that his mental capacity was diminished at the time of the offense.

B. Aberrant Behavior

The offenses for which the defendant stands convicted did not involve isolated acts. The defendant's scheme lasted over two years and involved hundreds of acts, including the creation of false invoices, his false submissions to Muro Pharmaceutical, and numerous downstream financial transactions with the pilfered funds. The defendant had ample opportunity to reflect on his conduct, and chose to perpetuate the scheme.

Moreover, the charged conduct notably does not include a series of false expense invoices the defendant submitted to Muro in 1997, including gas receipts for his wife's car. He was reprimanded by the company and was ordered to repay the money. Had he stopped there, one might say that the defendant's transgression was aberrant. Instead, he soon thereafter began the scheme that gave rise to this case, which he continued for over two years. The defendant can hardly claim, therefore, that his offense conduct amounted to an isolated lapse in judgment.

C. Extraordinary Family Circumstances

The defendant turns the "extraordinary family circumstances" departure ground on its head in arguing that the Court "should take [his] family's success into consideration at sentencing." See Def. Memo at 18. He offers no reason to believe that his incarceration would compromise support

States v. Harotunian, 920 F.2d 1040, 1047 (1st Cir. 1990). In 2003 (after Howard's conduct was complete), the Sentencing Commission amended section 5H1.3, a policy statement, to make perfectly clear that gambling addiction is not a legitimate departure ground: *"Addiction to gambling is not a reason for a downward departure."*

for family members in any way. To the contrary, he makes clear that his family is doing quite well. His argument, therefore, has nothing to do with the "family circumstances" departure; rather, it is a plea to the Court not to incarcerate the defendant because his family would suffer. The defendant offers no reason why his situation differs from any other defendant in this way.

D. Timeliness of the Defendant's Plea

Notwithstanding the fact that the defendant contends he is entitled to a third acceptance-of-responsibility adjustment level for having saved the government resources in trying this matter, the defendant maintains that he also deserves a downward departure for the same reason. See Def. Memo at 19. The defendant cites no case in which the saving of judicial resources was recognized as a departure ground, particularly where, as may happen here, the court grants the defendant a three-level acceptance-of-responsibility adjustment.

Nevertheless, the defendant's plea was not timely. He was indicted on January 28, 2004, and has since rejected several plea offers from the government. Moreover, he has chosen to put the government to its proof as to the loss in this case, requiring the unnecessary expenditure of resources.

Conclusion

The defendant has offered no reason why his case is so unusual that a straight guideline sentencing would be inappropriate. Accordingly, the Court should sentence the defendant to the mid-point in the applicable guideline range, namely 33 months incarceration.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Assistant U.S. Attorney